**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MICHAEL WOLFORD,**

        **Plaintiff,**

      **v.**                     **Civil Action 2:17-cv-901
                                  Magistrate Judge Jolson**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

## OPINION AND ORDER

Plaintiff Michael Wolford filed this action seeking review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits ("DIB"). For the reasons that follow, Plaintiff's Statement of Errors (Doc. 16) is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.

## I.    BACKGROUND

Plaintiff first filed an application for benefits nearly nine years ago in October 2009, and a complicated procedural history has followed. To put the procedural history in context, the Court first sets forth the relevant medical background. After doing so, the Court addresses the prior proceedings, including the hearing testimony and the ALJ's decision, to the extent necessary to reach a decision here.

### A.    Relevant Medical Background

Plaintiff was born in 1955. (Tr. 74, PAGEID #: 127). He has osteoarthritis and pain in his knees, and his amended onset date is January 3, 2009. (*See* Tr. 22, PAGEID #: 74). Dr. Robert A. Fada is an orthopedic surgeon who examined Plaintiff in September 26, 2008. Subsequent to that visit, on November 24, 2009, Dr. Fada completed a form entitled "Medical

Source Statement:  Patient's Physical Capacity."  (Tr. 455–56, PAGEID #: 512–13).  That form reflects Dr. Fada's opinion that Plaintiff can stand/walk for 30 minutes at a time for a total of four hours out of an eight-hour period and sit without limitation.  (Tr. 455, PAGEID #: 512).  Dr. Fada further opined that Plaintiff would not need any additional breaks during an eight-hour workday, apart from the normal breaks at approximately two-hour intervals.  (Tr. 456, PAGEID #: 513).  However, Dr. Fada checked the box indicating that Plaintiff would need an at-will sit/stand option.  (*Id*.).

Dr. Mark Baldwin is an independent consultative examiner who examined Plaintiff on December 2, 2009.  (Tr. 460–62, PAGEID #: 517–19).  Dr. Baldwin found that, although Plaintiff's gait favored his left leg, he did not demonstrate any difficulty going from sitting to standing.  (Tr. 461, PAGEID #: 518).  Dr. Baldwin noted mild, bilateral effusions and limited flexion of the knees.  (Tr. 462, PAGEID #: 519).  Dr. Baldwin found that Plaintiff had no palpable crepitus, a negative Drawer test, no excessive movement of the medial or lateral collateral ligaments, normal muscle strength in both lower extremities, and normal deep tendon reflexes.  (Tr. 460–62, PAGEID #: 517–19).  Dr. Baldwin's medical source statement provided that Plaintiff "cannot do any work requiring any type of standing.  He could work at a job that required only sitting but he would have to be given time to get up and move around."  (Tr. 462, PAGEID #: 519).

In January 2010, Plaintiff visited the Columbus VA Ambulatory Care Center and reported increased severity in knee pain.  (Tr. 509, PAGEID #: 566).  Plaintiff likewise reported that knee pain was interfering with his activities of daily living and sleep.  (*Id*.).

Dr. Larry Reed, Plaintiff's treating physician, examined Plaintiff on August 9, 2013, for bilateral knee pain and found normal strength, sensation, coordination; deep tendon reflexes in

the lower extremities with normal range of motion; and no objective findings for Plaintiff's complaints of knee pain. (Tr. 1081–83, PAGEID #: 1144–46 (noting "aching knees, no objective findings")). Dr. Reed made similar physical examinations findings in 2014 and 2015. (*See, e.g.*, Tr. 1082, PAGEID #: 1145; Tr. 1085–86, PAGEID #: 1148–49; Tr. 1137–38, PAGEID #: 1137–38).

### B. Prior Proceedings

Plaintiff initially filed an application for a period of disability and DIB in October 2009, alleging a disability onset date of June 12, 2008. (Tr. 74, 103, PAGEID #: 127, 158). After his application was denied initially and upon reconsideration (Tr. 78, 88, PAGEID #: 132, 142), Plaintiff filed a Request for Hearing by an Administrative Law Judge. (Tr. 94, PAGEID #: 148). The Request was granted, and Administrative Law Judge John Montgomery (the "ALJ") held a hearing on June 27, 2011. (Tr. 38, PAGEID #: 90). At the hearing, Plaintiff amended his onset date to January 3, 2009. (Tr. 22, PAGEID #: 74). The ALJ issued an unfavorable decision thereafter, finding that Plaintiff retained the capacity to perform sedentary activity including his past work. (Tr. 22–31, PAGEID #: 74–83). Plaintiff appealed to this Court. *See Wolford v. Comm'r of Soc. Sec.*, 2:12-cv-1145.

While Plaintiff's appeal was pending here, he filed new applications for DIB and Supplemental Security Income ("SSI") in December 2012 (Plaintiff's "December 2012 claims"). (Tr. 663, PAGEID #: 722). The new applications were denied initially and upon reconsideration. (Tr. 728, 738, PAGEID #: 788, 798).

In June 2013, the parties agreed to a remand of Plaintiff's original claim in *Wolford v. Comm'r of Soc. Sec.*, 2:12-cv-1145. (Doc. 15 in 2:12-cv-1145). In doing so, the parties stipulated that the ALJ would obtain additional evidence, reevaluate certain opinions

(specifically those provided by Dr. Fada and Dr. Baldwin), obtain supplemental vocational evidence in support of the step four finding, and, if warranted, determine whether Plaintiff could perform other occupations that exist in significant numbers in the national economy. (*Id.*). The Court adopted the stipulation and ordered the case to be remanded in July 2013. (Doc. 16 in 2:12-cv-1145).

On December 1, 2014, the Appeals Council issued an order remanding Plaintiff's December 2012 claims for DIB and SSI to the ALJ for further proceedings. (Tr. 680–84, PAGEID #: 739–43). Noting the Court's remand in *Wolford v. Comm'r of Soc. Sec.*, 2:12-cv-1145, the Appeals Council vacated the Commissioner's final decision on Plaintiff's December 2012 claims and remanded those claims to the ALJ to address the following issues:

- The residual functional capacity assessment (RFC) did not include the limitations assessed by treating and examining sources though the opinions were given significant or great weight. On November 24, 2009, the claimant's treating physician, Robert A. Fada, M.D, opined that in an eight hour day, the claimant could stand/walk for four hours, sit for eight hours; he can stand/walk for 30 minutes at a time; he can rarely climb, stoop, crouch, kneel or crawl; he needs a sit/stand option; and he experiences moderate pain (Tr. 455–59). The decision gave significant weight to this opinion because it was consistent with the objective medical evidence (Tr. 29). The RFC included several of the limitations Dr. Fada assessed; however, the decision did not address Dr. Fada's opinion that the claimant required a sit/stand option and the decision did not explain why that limitation was rejected (Social Security Ruling (SSR) 96-8p). SSR 96-8p provides that if the RFC conflicts with a medical source opinion, the adjudicator must explain why the opinion was not adopted.

- The examining physician, Mark Baldwin, D.O., opined that the claimant could not perform jobs that required "any type of standing" but he could perform sitting jobs that permitted him to move around (Tr. 462). The decision gave great weight to this opinion but the RFC did not include the limitation from standing and the decision did not provide rationale for rejecting it.

- The RFC presented to the vocational expert at the hearing was less restrictive than the RFC in the decision. At step four of the sequential evaluation process, the decision stated that the claimant could perform his past relevant work as a Receiving Clerk (Tr. 29–30). The decision cited the vocational expert's testimony in support of this finding (*id.*). However, the RFC presented to the vocational

4

expert differed from the one in the decision. The decision stated that the claimant "can only sit for one hour at a time for a total of 6 out of 8 hours, stand and walk for 30 minutes at a time for two hours total and occasionally climb stairs, stoop, kneel, and crouch. He cannot climb ropes, ladders, or scaffolding and should avoid hazards such as unprotected height, machinery, and concentrated exposure to temperature extremes" (Tr. 26). At the hearing, the ALJ asked the vocational expert to assume that the hypothetical individual could perform no more than sedentary work but would need to change position after one hour, sit for a couple of minutes if standing, or stand for a couple of minutes if sitting, etc. (Tr. 67–68). Although the vocational expert responded that the individual could perform the claimant's past work, the sitting limitation in the RFC differs considerably from the one in the decision where the claimant was limited to standing and walking for 30 minutes at a time (Tr. 26). Thus, the vocational expert's testimony is not substantial evidence for the step four finding.

(Tr. 682–83, PAGEID #: 741–42). The Appeals Council also specified that, upon remand, the

ALJ was to:

- Obtain additional evidence concerning the claimant's medically determinable impairment in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512–1513).

- Give further consideration to the treating and non-treating source opinions pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating and non-treating sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairment (20 CFR 404.1512).

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 96-8p).

- Further evaluate the claimant's past relevant work and determine if he is capable of performing any of his past jobs in accordance with the regulations. If warranted, the Administrative Law Judge should obtain a detailed work history report and develop the record further with regards to the claimant's work history.

- If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14), and to determine whether the claimant has acquired any skills that are transferable to other occupations under the guidelines

in Social Security Ruling 82-41. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(Tr. 683–84, PAGEID #: 742–43). Finally, the Appeals Council found Plaintiff's December 2012 claims to be duplicative of Plaintiff's 2009 claim, so it ordered the ALJ to "associate the claim files and issue a new decision on the associated claims." (Tr. 684, PAGEID #: 743).

On July 27, 2015, the ALJ issued two separate decisions denying Plaintiff's applications. (Tr. 546–57, PAGEID #: 604–15 (addressing SSI); Tr. 563–74, PAGEID #: 621–32 (addressing DIB)). In Plaintiff's Statement of Errors, he states that the ALJ's "essential findings are the same in both decisions;" thus, Plaintiff cites only to the ALJ's decision denying his application for DIB. (Doc. 16 at 2). Defendant does the same in opposition. (Doc. 17 at 3, n.3). Plaintiff did not file a reply brief.

Following the parties' lead, this Court cites only to the ALJ's decision concerning Plaintiff's application for DIB (the "DIB Decision"). (Tr. 560–83, PAGEID #: 618–41). Plaintiff requested review of that decision by the Appeals Council (Tr. 787, PAGEID #: 847), which denied his request. (Tr. 533–35, PAGEID #: 591–93). Thus, the ALJ's DIB Decision constitutes the Commissioner's final decision.

### C.    Relevant Hearing Testimony

For purposes of reaching a decision here, Plaintiff's first hearing (held in July 2011) is noteworthy only to the extent that Plaintiff testified that he has difficulty sitting for more than 10 or 15 minutes before he needs to change positions. (Tr. 48, PAGEID #: 100). Because

Plaintiff's second hearing (held in June 2015) is more relevant to this decision, the Court examines it more fully below. (Tr. 584–628, PAGEID #: 642–86).

### 1. Plaintiff's Testimony

During Plaintiff's second hearing, he testified that he lives with his brother because he "can't afford anything else." (Tr. 588, PAGEID #: 646). Plaintiff's counsel explained that Plaintiff's "most significant" impairment is "degenerative joint disease of both knees." (*Id.*). His counsel argued that this condition, "in addition to [Plaintiff's] insulin dependent diabetes, [his] status post coronary artery bypass graph, hypertension, some lumbar issues, and some neurologic issues … preclude [Plaintiff] from doing his past work or any other work." (Tr. 589, PAGEID #: 647).

Plaintiff testified that he is 5'7" and weighs 184 pounds. (*Id.*). He has a driver's license and drives approximately two to three times per week. (Tr. 589–90, PAGEID #: 647–48). Plaintiff graduated from high school and attended college for a period of time. (Tr. 590, PAGEID #: 648). Plaintiff's work history includes positions as an administrative assistant (*id.*), a transportation specialist (Tr. 591, PAGEID #: 649), a janitorial assistant (Tr. 593, PAGEID #: 651), a supply technician (Tr. 593–94, PAGEID #: 651–52), a material handler (Tr. 594, PAGEID #: 652), a receiving manager (Tr. 595, PAGEID #: 653), and a surveillance monitor (Tr. 596, PAGEID #: 654).

Plaintiff testified that he is unable to stand for five minutes without pain. (Tr. 598, PAGEID #: 656). Plaintiff explained that he also has problems sitting more than five minutes due to arthritis and urinary frequency caused by his diabetes. (Tr. 600–601, PAGEID #: 658–59). Plaintiff testified that he uses a prescribed cane to rise from a seated position, ambulate, and climb "some" stairs. (*Id.*). Plaintiff stated that he can lift approximately ten to fifteen

pounds.  (Tr. 601, PAGEID #: 659).

Plaintiff goes to the library, reads, and watches television.  (Tr. 603, PAGEID #: 661).
Occasionally, he plays pool and goes to karaoke outside of his house.  (*Id.*).  Plaintiff's
household chores include washing dishes, preparing meals, and sweeping the house.  (*Id.*).
Plaintiff testified that he has difficulty getting dressed and getting out of the shower.  (Tr. 604,
PAGEID #: 662).

### 2. Medical Examiner Dr. Jonathan W. Nusbaum's Testimony

Medical Examiner Dr. Jonathan W. Nusbaum also testified at the hearing.  (Tr. 610,
PAGEID #: 668).  Dr. Nusbaum stated that Plaintiff's "primary issue is his degenerative
arthritis of his knees," which became severe in the beginning in November 2009.  (Tr. 613, 616,
PAGEID #: 671, 674).  Dr. Nusbaum testified that Plaintiff "has a great deal of difficulty
ambulating" and "[h]is ability to carry any objects would be substantially restricted."  (Tr. 612,
PAGEID #: 670).  Dr. Nusbaum stated:

> [Plaintiff] has a history of degenerative arthritis, primarily of both knees.  It is
> severe in nature.  Consideration for total joint replacement has been
> recommended.  He has repeated episodes of antalgic gait and has used—required
> a cane for the past two years.  I believe that, in my opinion, he has a very limited
> ability to ambulate, to climb stairs, and that adversely affects his lifting and
> certainly affects his carrying.  I think he satisfies the requirements for listing
> 1.02a.

(Tr. 611, PAGEID #: 669; *see also* Tr. 616, PAGEID #: 674 ("I said he met [listing 1.02A].
Yes.")).  Dr. Nusbaum explained that his opinion was "based on the whole constellation of his
complaints of pain, his x-ray findings, [and] his need to use a cane."  (Tr. 617, PAGEID #: 675).
He added that walking on uneven surfaces would be "extremely difficult" for Plaintiff.  (*Id.*).

The ALJ asked several follow-up questions concerning Dr. Nusbaum's opinion that
Plaintiff satisfied the Listing:

Q. … As I looked through the record I noted that several of the clinic notes, specifically like in Exhibit 28F, 29F, 33, from Dr. Reed, it seems like on multiple occasions [Plaintiff was] noted to have a normal gait, a normal range of motion of all extremities, normal strength. Can you comment on that?

A. Yes. I don't believe that either of those really address any protracted ambulation. By that I mean any distance over 10 or 20 feet. I'm not picking on Dr. Henry, but I would not want a urologist to look at somebody's ability to ambulate.

ALJ: Well this is Dr. Reed. I'm not sure what his specialty is.

CLMT: He's a family physician as far as I know, sir.

ALJ: Okay.

CLMT: That is my doctor and has been for the last two or three years.

ALJ: Right.

Q. So when a typical Claimant would go to see their family doctor, let's say more of a follow-up for their diabetes and their urology, help me understand why their notes would talk about normal range of motion and normal gait? Are they just not—

A. Perhaps maybe, subjecting a little bias, but most of these are computer generated notes and they're hitting a button. They don't have — the talk about range of motion, they don't talk anything about whether there's crepitance or not, it's not a detailed, in my opinion, a detailed examination of their knees.

Q. Okay. And so then in making this conclusion as to 1.02a, I know he just started using a cane about a year ago.

A. Yes.

Q. But you feel this level has been present all the way back to the onset date?

A. He has — for example he has X-rays in December of 2009, and in January of 2010, which shows severe bilateral tri-compartmental degenerative arthritis. So yes. And at that point-in-time the discussions are taking place about having a total knee replacement.

Q. And so why hasn't the knee replacement happened?

A. That's a question I cannot answer.

(Tr. 613–14, PAGEID #: 671–72).

Dr. Nusbaum testified that he would assign Plaintiff the following residual functional capacity:

> If I were to create a functional capacity given his findings we keep dealing with lifting ten pounds occasionally and five pounds frequently. I believe based on the objective record he could sit for two hours, at least six hours in an eight hour day, but I think standing and/or walking would be limited to 30 minutes at a time, no more than two hours in an eight hour day. Stooping, squatting, crouching, crawling, stairs would be limited to less than occasional, which in this instance I would say it would be less than 10% of the time. I believe that ladders would be precluded. I believe that he could not work in environments of high concentrations of fumes, dust, or high humidity and would be limited to working in a temperature range of 35 to 85 degrees Fahrenheit because of his coronary artery disease. I believe that foot controls would be less than occasional which I would define is 20% of the time, and that's bilaterally.

(Tr. 614–15, PAGEID #: 672–73).

The ALJ observed that Dr. Fada, in contrast, completed an RFC form in November 2009, "where he indicated he felt like [Plaintiff] could stand and walk for up to four hours, rather than the two that [Dr. Nusbaum] indicated." (Tr. 615, PAGEID #: 673). The ALJ asked Dr. Nusbaum to help him understand why his opinion differed from Dr. Fada's opinion. (*Id*.). Dr. Nusbaum first explained that the difference was "[b]ased on x-ray reports," but when Plaintiff indicated that Dr. Fada also took an x-ray, Dr. Nusbaum stated, "You know, I cannot apply anything about his opinion which differs from mine." (*Id*.). Dr. Nusbaum elaborated, "I can only state why I've had my opinion." (Tr. 616, PAGEID #: 674).

### 3. Vocational Expert Jerry Oshesky, Ph.D.

Vocational Expert Jerry Oshesky, Ph.D. (the "VE") answered various hypotheticals posed by the ALJ. (Tr. 618, PAGEID #: 676). The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and past work experience who could: (1) lift up to ten pounds both frequently and occasionally; (2) sit for two hours at a time for up to at least six

hours out of an eight hour workday; (3) stand and walk for thirty minutes at a time for a total of four hours out of an eight-hour period; (4) and occasionally climb stairs, stoop, kneel, crouch (but not climb ropes, ladders, and scaffolds). (Tr. 620, PAGEID #: 678). The hypothetical individual, the ALJ explained, would also need to avoid concentrated exposure to temperature and humidity extremes as well as respiratory irritants. (*Id.*).

The VE testified that such an individual would be capable of performing Plaintiff's past jobs of surveillance system monitor, administrative assistant, and data processing entry clerk as it is typically performed. (*Id.*). The VE indicated that the administrative assistant position might be eliminated if the hypothetical individual were further limited to stair climbing, stooping, kneeling, or crouching for only 10% of a workday. (Tr. 621, PAGEID #: 679). However, the VE testified that the use of a cane for walking and standing would not impact the essential functions of the jobs, and none of them ordinarily require walking on uneven surfaces. (Tr. 621–23, PAGEID #: 679–81).

The ALJ questioned the VE concerning the hypothetical individual's ability to stand and stretch:

> Q. And with these past jobs that you identified, specifically the data entry clerk, is this a job that, say, after being seated for an hour  the individual would be able to, like, stand and stretch and then sit back down, or would they have to remain seated the full two hours?
>
> A. Well, they'd remain seated to do the work, but they could get up and stretch momentarily on a job like that.

(Tr. 623, PAGEID #: 681). The ALJ also asked the VE about the "Medical Source Statement: Patient's Physical Capacity" form completed by Dr. Fada on November 24, 2009 (Tr. 455–56, PAGEID #: 512–13):

> Q. [W]hen you see the phrase sit/stand option, how do you interpret that?

A.  Well, unless it's quantified it pretty much means to me that they should be able to alternate between sitting and standing pretty much at-will or as-needed.

Q.  Okay.  But on that same form the doctor was asked if the Claimant needed to rest for some period during eight hours, he said no, that a morning break, a lunch break, and afternoon break would be sufficient at two hour intervals.  And the doctor also indicated that the individual could stand and walk for 30 minutes at a time for a total of 4 hours and sit for eight hours for a total of 8 hours.  Would that redefine what this doctor might have meant by a sit/stand option?  Do you think that his statement that the person could stand and walk for 30 minutes and 4—I mean I saw an inconsistency in saying sit/stand option, but then assessing that the Claimant could sit for 8 hours and could walk for—stand and walk for 30 minutes.

A.  Sounds like it's not internally consistent to me.

Q.  But in your opinion—

A.  I mean if you could sit for eight hour—

Q.  The sit/stand option means pretty much at-will.

A.  Yeah, unless they say, well, you need to sit for so many minutes, then stand for a few minutes, or whatever….

(Tr. 625–26, PAGEID #: 683–84).

### D.      The DIB Decision

The ALJ first acknowledged the procedural history underlying his decision.  (Tr. 563,

PAGEID #: 621).  He stated, in relevant part:

This case is before the undersigned Administrative Law Judge on remand from the Appeals Council pursuant to a remand from the United States District Court for the Southern District of Ohio….  Pursuant to the District Court remand order, the Appeals Council has directed the undersigned to obtain additional evidence concerning the claimant's medically determinable impairments in order to complete the administrative record; give further consideration to the treating and non-treating source opinions; give further consideration to the claimant's maximum residual functional capacity; further evaluate the claimant's past relevant work and determine if he is capable of performing any of his past jobs; [and] obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base[.]

(*Id.*).

In the substance of the DIB Decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2018. (Tr. 565, PAGEID #: 623). Although Plaintiff engaged in some work after the alleged disability onset date of January 3, 2009, the ALJ determined that Plaintiff had not engaged in substantial gainful activity. (Tr. 565–66, PAGEID #: 623–64). The ALJ determined that Plaintiff suffered from the severe impairments of degenerative arthritis of the knees, coronary artery disease status post-bypass grafting, hypertension, and type II diabetes mellitus. (Tr. 566, PAGEID #: 624). However, the ALJ held that none of the impairments alone or in combination met or equaled a listed impairment. (Tr. 567–68, PAGEID #: 625–26).

The ALJ specifically noted that he had considered Listing 1.02 for joint dysfunction and Dr. Nusbaum's opinion that Plaintiff satisfied that Listing. (Tr. 567–68, PAGEID #: 625–26). However, the ALJ determined that that Plaintiff did not meet all of Listing 1.02's requirements. (*Id*.). The ALJ explained:

> The undersigned has considered listing 1.02 for joint dysfunction as well as the opinion of Dr. Nusbaum, an impartial medical expert and orthopedic surgeon, who opined that the claimant meets listing 1.02(A) due to ineffective ambulation. Dr. Nusbaum testified that despite the claimant's testimony that [he] only started using a cane intermittently a year ago, the claimant met listing 1.02 as of January of 2009 due to [his] use of cane and an inability to walk on uneven surfaces. However, the regulations in listing 1.00B2(B) define inability to ambulate effectively as an extreme limitation of the ability to walk such as the inability to walk without the use of a walker, two crutches or two canes, among other extreme examples. In this case, the claimant testified that he uses a cane at home to assist with getting up from a chair to walk and climbing stairs, which is not an extreme limitation on the ability to walk. Moreover, repeated physical examination findings by Dr. Reed, the claimant's treating family physician, have found no indication of gait abnormalities with normal strength, sensation and coordination of the lower extremities (Exhibits 23F, page 6; 30F, page 3 & 37F, page 3). Even Dr. Fada, the claimant's treating orthopedic specialist who recommended total knee replacement, indicated that the claimant has not been prescribed a cane and does not use an assistive device to ambulate (Exhibit 10F, pages 2, 4). It is also noted that Dr. Nusbaum subsequently testified … that the claimant retained the capacity for a range of sedentary work. Dr. Nusbaum opined that the claimant

could stand and/or walk for 30 minutes at a time for up to two hours out of an eight-hour period, could climb stairs 10% of the workday, and sit for two hours at a time for at least six hours out of an eight-hour workday. Such abilities would not constitute [the] "extreme" limitations anticipated by the Listings. While the ME opinion regarding meeting or equaling the Listings cannot be accepted, Dr. Nusbaum's conclusions as to the claimant['s] functional capacity is given significant weight as discussed below. Lastly, the claimant has worked as a material handler, janitor-cleaning assistant, bus driver and in the mailroom up to 20 hours a week without evidence that he needed a cane in order to ambulate effectively (Exhibit 40E). Such activities are inconsistent with a "listings level" impairment.

(*Id*.).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ found Plaintiff could:

[P]erform a range of sedentary work as defined in 20 CFR 404.1567(a) except he can lift/carry no more than 10 pounds; sit 2 hours at a time for a total of 6 hours in an 8 hour workday; stand/walk 30 minutes at a time for a total of 2 hours in an 8 hour workday; climb stairs, stoop, kneel, and crouch for less than 10 percent of the workday; cannot climb ropes, ladders and scaffolds; cannot operate foot controls; and must avoid workplace hazards, temperature and humidity extremes and respiratory irritants.

(Tr. 568, PAGEID #: 626). In so finding, the ALJ stated that, although Plaintiff has an underlying medically determinable impairment that could reasonably cause some symptomology, "a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged…." (Tr. 569, PAGEID #: 627). More specifically, the ALJ found that Plaintiff's "allegations of debilitating knee pain, fatigue, and dizziness are inconsistent with the opinion of the impartial vocational expert, physical examination findings, an unimpressive medical treatment history and high functioning activities of daily living that include work activity throughout the claimant's alleged period of disability." (*Id*.).

Although the ALJ considered Dr. Nusbaum's opinion concerning Plaintiff's degenerative joint disease of the knees as shown in x-rays from January 2010, he also noted that "Dr.

Nusbaum opinion that functionally, [Plaintiff] is capable of sedentary work activity consistent with [a] residual functional capacity with an ability to stand and walk 30 minutes at a time for a total of two hours in a normal workday." (Tr. 569–70, PAGEID #: 627–28). The ALJ also noted that Dr. Baldwin found in December 2009 that Plaintiff did not demonstrate any difficulty going from sitting to standing and did not need a cane for ambulation. (Tr. 570, PAGEID #: 628 (citing Exhibit 11F)). Similarly, the ALJ observed that Dr. Reed's August 2013 examination found "normal strength, sensation, coordination and deep tendon reflexes in the lower extremities with normal range of motion" and "no objective findings for [Plaintiff's] allegations of aching knees." (*Id*. (citing Exhibit 29F, page 6)). The ALJ further observed that Dr. Reed made similar findings throughout 2014 and 2015. (*Id*.).

Moreover, the ALJ found that, despite Plaintiff's "occasional use of a cane at home to climb stairs and rise out of a chair, there is no evidence that a cane has been prescribed." (*Id*.). The ALJ added that Plaintiff's knee condition was treated only with intermittent injections, as opposed to surgery or prescribed narcotic pain medications, "which strongly suggests that the symptoms may not have been as serious as has been alleged…." (Tr. 570–71, PAGEID #: 628–29 ). Concerning Plaintiff's activities of daily living, the ALJ noted that Plaintiff "has worked almost throughout his entire alleged period of disability," and played pool and did karaoke, both of "which also involve sustained standing and walking." (Tr. 571, PAGEID #: 629).

The ALJ determined that, given Plaintiff's RFC, Plaintiff is capable of performing past relevant work as a data processing entry clerk, which is a semi-skilled and sedentary position. (Tr. 573, PAGEID #: 631). Based upon these findings, the ALJ held that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 3, 2009, through the date of the decision. (Tr. 574, PAGEID #: 632).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

## III. DISCUSSION

Plaintiff first argues that the ALJ erred in finding that his degenerative arthritis of the knees does not satisfy Listing 1.02A. Next, Plaintiff contends that the ALJ erred in concluding that he had the RFC to return to his past sedentary occupation. The Court considers these alleged errors in turn.

### A. If the ALJ Properly Considered Whether Plaintiff Met or Equaled Listing 1.02A

In his first statement of error, Plaintiff argues that the ALJ incorrectly concluded that Listing 1.02A was unsatisfied because the ALJ "misinterpreted the meaning of ineffective ambulation." (Doc. 16 at 14). Listing 1.02 defines major dysfunction of a joint and states, in pertinent part:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in *inability to ambulate effectively*, as defined in 1.00B2b[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02 (emphasis added). Under the Regulations, "[i]neffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.02B(2)(b). Examples of ineffective ambulation include, but are not limited to:

> the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.*

In this case, Plaintiff argues that the ALJ erred in focusing on just one example of ineffective ambulation in § 1.00B(2)(b), namely the inability to walk without the use of a walker, two crutches, or two canes. (Doc. 16 at 15). Plaintiff states that § 1.00B(2)(b) also provides that ineffective ambulation can be demonstrated by an inability to sustain a reasonable walking pace over a sufficient distance to carry out activities of daily living, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. (*Id.*).

Plaintiff argues that he demonstrated ineffective ambulation through Dr. Nusbaum's testimony, which provided that Plaintiff had a very limited ability to ambulate and climb stairs, and he would have extreme difficulty walking on uneven surfaces. (*Id.*; Tr. 611–12, 617, PAGEID #: 669–70, 675). Plaintiff also relies on Columbus VA Medical Center records noting his complaint that his knee pain "had become more severe" and was interfering with his

activities of daily living and sleep. (*Id.*; Tr. 509, PAGEID #: 566). Plaintiff contends that "[t]his evidence and the full definition of ineffective ambulation were not considered by the ALJ when determining whether the Plaintiff's bilateral knee osteoarthritis met the listing criteria." (*Id.*).

This Court disagrees. The ALJ did not, as Plaintiff argues, find that Plaintiff failed to satisfy Listing 1.02A simply because Plaintiff is able to walk without the use of a walker, two crutches, or two canes. Indeed, the ALJ explicitly recognized that an inability to ambulate effectively under § 1.00B(2)(b) is demonstrated by "the inability to walk without the use of a walker, two crutches or two canes, *among other extreme examples*." (Tr. 567, PAGEID #: 625) (emphasis added). Here, the ALJ examined the totality of the objective medical evidence and determined that Plaintiff failed to satisfy his burden of demonstrating that his impairment met or equaled Listing 1.02A. (Tr. 570, PAGEID #: 628).

In the ALJ's decision, he noted that Plaintiff's treating physician, Dr. Reed, examined Plaintiff for bilateral knee pain on August 9, 2013, and found normal strength, sensation, coordination; deep tendon reflexes in the lower extremities with normal range of motion; and no objective findings for the claimant's allegations of aching knees. (Tr. 567, 570, PAGEID #: 625, 628). The ALJ noted similar findings by Dr. Reed throughout 2014 and 2015. (*Id.*; *see, e.g.*, Tr. 1082, PAGEID #: 1145; Tr. 1085–86, PAGEID #: 1148–49; Tr. 1137–38, PAGEID #: 1200–1201). The ALJ also discussed Dr. Baldwin's objective findings from December 2009, stating:

> Despite the claimant's testimony that he uses a cane to help transition from sitting to standing, Dr. Baldwin found that [an] evaluation of the claimant's gait did not show any difficulty going from sitting to standing. Moreover, while Dr. Baldwin noted that the claimant's gait favored his left leg, there was no indication that he used a cane to ambulate. Dr. Baldwin noted mild, bilateral effusions and limited flexion of the knees. However, Dr. Baldwin found no palpable crepitus, negative Drawer test, no excessive movement of the medial

or lateral collateral ligaments, normal muscle strength in both lower extremities and normal deep tendon reflexes (Exhibit 1lF).

(*Id.*; *see* Tr. 460–62, PAGEID #: 517–19). The ALJ further observed that Plaintiff's knee condition was treated with intermittent injections, as opposed to more aggressive options, such as surgery or prescription pain medications. (Tr. 570–71, PAGEID #: 628–29).

The ALJ found that, even if Plaintiff used a cane in 2014 and had an inability to walk on uneven surfaces at that time, there is no evidence showing he suffered the same deficiencies as early as January 3, 2009, his amended onset date. (Tr. 567, PAGEID #: 625). The ALJ likewise observed that, throughout the relevant period, Plaintiff worked as a material handler, janitor-cleaning assistant, bus driver, and mailroom attendant. (Tr. 568, 571, PAGEID #: 626, 629). Finally, the ALJ gave significant weight to the state agency reviewing physicians, who determined that Plaintiff was capable of sedentary work with postural and environmental limitations. (Tr. 571–72, PAGEID #: 629–30).

The ALJ acknowledged Dr. Nusbaum's opinion that Plaintiff satisfied the requirements of Listing 1.02A beginning in January 2009. (Tr. 567, PAGEID #: 625). However, the ALJ was free to reject Dr. Nusbaum's opinion based on the totality of the relevant evidence. *See, e.g.*, *Jackson v. Comm'r of Soc. Sec.*, No. 1:15-CV-384, 2016 WL 1211425, at *7 (W.D. Mich. Mar. 29, 2016) (holding that the ALJ correctly noted that doctor's "opinion that Plaintiff met a listing, was an opinion reserved to the Commissioner"); *Axton v. Comm'r of Soc. Sec.*, No. 2:12-CV-216, 2014 WL 359820, at *4 (E.D. Tenn. Feb. 3, 2014) ("Opinions on some issues, such as … whether a claimant meets a Listing … are not medical opinions, ... but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.") (citing 20 C.F.R.

§ 404.1527(d); SSR 96–5p) (internal quotations omitted).  Here, the ALJ did so, finding that the record as a whole did not support Dr. Nusbaum's testimony.  (Tr. 567–68, PAGEID #: 625–26).

Based on the foregoing, the ALJ acted within his discretion in finding that the totality of the record evidence undermined Dr. Nusbaum's opinion that Plaintiff satisfied Listing 1.02A.  *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) (explaining that an impairment must satisfy all the specified medical criteria to meet a listing); *Axton*, 2014 WL 359820, at *4 ("Although physicians' statements about what a claimant can do are relevant evidence, they are not determinative.  The ALJ has the responsibility of … determining whether a claimant meets a Listing.") (citing 20 C.F.R. §§ 404.1513(b), 404.1527(d), 404.1545, 404.1546(c); SSR 96–5p).  Ultimately, Plaintiff bore the burden of demonstrating that he met or equaled a listed impairment at step three of the sequential evaluation.  *Bluer v. Comm'r of Soc. Serv.*, No. 1:13-CV-22, 2014 WL 700424, at *4 (W.D. Mich. Feb. 24, 2014) (citing *Evans v. Sec'y of Health & Human Services*, 820 F.2d 161, 164 (6th Cir. 1987)); *see also Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (stating that "Plaintiff had the burden of showing that his impairments were equal or equivalent to a listed impairment.").  The ALJ did not err in finding that Plaintiff failed to satisfy that burden, and his decision is not subject to reversal simply because evidence may exist to support a different conclusion.  *See Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1996).  For these reasons, Plaintiff's first statement of error is without merit.

### B.  Whether the RFC Accounted for Certain Limitations

Next, Plaintiff contends that the ALJ erred in concluding that he had the RFC to return to his past sedentary occupation.  In particular, Plaintiff argues that the ALJ's opined RFC fails to address his need for a cane and a sit/stand option.  (Doc. 16 at 16).

*1. Plaintiff's Cane*

As to the cane, Plaintiff asserts that "the ALJ erroneously found that there was no evidence that [his] cane had been prescribed and did not account for its use in his residual functional capacity." (*Id.*). Plaintiff contends that he uses the cane for mobility and to rise from a chair, and the ALJ's failure to consider it makes it "impossible to determine the degree of erosive impact this has upon Plaintiff's capacity for sedentary work." (*Id.* at 17). Indeed, a review of the record shows that Dr. Reed ordered the cane to be used "daily, as needed," in August 2013. (Tr. 1083, PAGEID #: 1146). In opposition, Defendant argues that, even if the ALJ erred in overlooking that Plaintiff medically requires a cane, the unskilled sedentary occupational base would not be significantly eroded for that reason. (Doc. 17 at 8).

Defendant's position finds support in the ALJ's decision, which states that "SSR 96-9 provides that even if a hand held assistive device is medically required for prolonged ambulation, walking on uneven terrain or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded." (Tr. 570, PAGEID #: 628). Moreover, as Defendant argues, the VE testified that Plaintiff would be able to perform his past relevant work even with a cane. (Doc. 17 at 9). The relevant exchange is as follows:

> Q. Now if the individual required the use of a cane for walking and standing, would that impact on the essential functions of these past jobs?
>
> A. No.

(Tr. 621–22, PAGEID #: 679–80). Thus, Plaintiff fails to demonstrate that, even if the ALJ had properly considered his medical need for a cane, that consideration would have made a difference in the final disability determination. *Cf. Shinseki v. Sanders,* 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *see Scott v. Comm'r of Soc. Sec.,* No. 14-11500, 2015 WL

4634077, at *7 (E.D. Mich. July 6, 2015) ("[A]ny error by the ALJ in failing to include plaintiff's need to use a cane for walking and standing is harmless because the vocational expert specifically testified that a significant number of jobs in the light work category were available for a person with plaintiff's RFC as stated by the ALJ *and* who needed to use a cane for walking and standing."), *report and recommendation adopted by* No. 14-CV-11500, 2015 WL 4633927 (E.D. Mich. Aug. 3, 2015); *Jozlin v. Comm'r of Soc. Sec.*, No. 12-cv-10999, 2013 WL 951034, *9 (E.D. Mich. Mar. 12, 2013) (finding that ALJ's failure to include need for a cane (which precluded light work) in the RFC was harmless error because the vocational expert testified that the plaintiff could also perform a significant number of sedentary jobs available in the economy)). For these reasons, the Court agrees that the ALJ's error was harmless. *See, e.g.*, *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535–36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ was unnecessary where such error was harmless).

### 2. Sit/Stand Option

Finally, Plaintiff claims that the ALJ also failed to account for his need for a sit/stand option, which would prohibit him from returning to his past relevant work. (Doc. 16 at 17). In support, Plaintiff relies on the form completed by Dr. Fada in November 2009, on which he checked the box indicating that Plaintiff "need[s] an at-will sit/stand option." (*Id.*; Tr. 456, PAGEID #: 513). Plaintiff also relies on Dr. Baldwin's opinion from December 2009, which stated that Plaintiff "could work at a job that required only sitting[,] but he would have to be given time to get up and move around." (*Id.*; Tr. 462, PAGEID #: 519). Additionally, Plaintiff refers to his own testimony during his first hearing, where he explained that he has difficulty sitting for more than 10 or 15 minutes before he needs to change positions. (*Id.*; Tr. 48, PAGEID #: 100).

Plaintiff argues that the ALJ improperly attempted to accommodate his need for an at-will sit/stand option by allowing him to change positions every 30 minutes. Plaintiff asserts that such an accommodation would be inadequate because, as the VE testified, Plaintiff's "past sedentary positions had to be performed while seated, but would allow him to stand and stretch momentarily (Page ID 681)." (*Id.* at 19). Plaintiff argues that standing and stretching only momentarily would not be sufficient and, hence, remand for a proper RFC determination is warranted. (*Id.*).

As Defendant argues, however, the ALJ considered Dr. Fada and Dr. Baldwin's opinions and ultimately found that the record evidence undermined a requirement for an at-will sit/stand option. Concerning Dr. Fada's opinion, the ALJ stated:

> Dr. Fada is a specialist in Orthopedic Surgeon [sic], who initially saw the claimant on September 26, 2008, noting him to have moderate pain, and suggested that surgery be performed. The record does not document other examinations. On November 24, 2009. Dr. Fada completed a physical capacity form indicating that the claimant could stand/walk for 30 minutes at a time for a total of four hours out of an eight-hour period, and sit without limitation. He also noted that the claimant would not need any additional breaks during an eight-hour workday besides the normal breaks at approximately two-hour intervals. Nonetheless, he also responded "YES" to the question "Does the individual need an at-will SIT/STAND option?" However, Dr. Fada does not explain his definition of an "at will sit/stand option" and the totality of this document must be considered in understanding this limitation. Given Dr. Fada's conclusion that the claimant can sit without limitation and he can stand/walk for 30 minutes for a total of four hours implies that the claimant would not truly need to sit/stand "at will" but merely after 30 minutes. This interpretation is consistent with the other evidence of record including the testimony of the medical expert.

(Tr. 572, PAGEID #: 630). The ALJ thus determined that Dr. Fada's opinion did not require a sit/stand option "at will," but instead required a sit/stand option "only after thirty minutes of standing or walking." (Tr. 568, PAGEID #: 626).

Concerning Dr. Baldwin's opinion, the ALJ acknowledged his opinion that Plaintiff should be "limited to a sitting job where he would be given time to get up and move around."

(Tr. 573, PAGEID #: 631). Ultimately, however, the ALJ assigned Dr. Baldwin's opinion "little weight" because it inconsistent with Dr. Baldwin's own physical examination findings (including his findings that Plaintiff had normal muscle strength in the lower extremities, no crepitus, mild effusion, and a limited range of motion). (*Id.* (citing Exhibit 11F, pages 2–3)). The ALJ also found Dr. Baldwin's opinion inconsistent with Plaintiff's activities of daily living, which included sustained work activity during his alleged disability period. (*Id.*).

Based upon the foregoing, it was within the ALJ's discretion to reject Dr. Fada and Dr. Baldwin's opinions as they concerned a sit/stand option. *See Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (finding it reasonable for the ALJ to discount a physician's opinion because it conflicted with other evidence in the record, including the physician's own treatment notes); *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 668 (6th Cir. 2009) (noting that the ALJ has the discretion to weigh all of the record evidence). The ALJ adequately explained his reasons for doing so, and there is no basis to find that the ALJ acted outside of his "zone of choice" in determining that Plaintiff could perform past relevant work. *See, e.g.*, *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (noting that "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference").

## IV. CONCLUSION

For the reasons stated, Plaintiff's Statement of Errors (Doc. 16) is **OVERRULED** and judgment is entered in favor of Defendant.

IT IS SO ORDERED.


Date: May 25, 2018                                    /s/ Kimberly A. Jolson
                                                     KIMBERLY A. JOLSON
                                                     UNITED STATES MAGISTRATE JUDGE

24